UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN FERGUSON,

               Petitioner,

          -against-

M. McGINNIS,

              Respondent.
------------------------------------------------------X

**REPORT AND RECOMMENDATION**

02 Civ. 10243 (KMK)(KNF)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/8/05

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE KENNETH M. KARAS, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

John Ferguson ("Ferguson") has made an application for a writ of habeas corpus. He contends that his confinement by the state of New York is unconstitutional because: (1) the trial court erred when it gave preliminary instructions to prospective jurors that described the elements of the charged crimes but did not caution the prospective jurors against deliberating on petitioner's guilt prematurely; and (2) insufficient evidence was presented to the jury from which it could find him guilty beyond a reasonable doubt.

The respondent opposes the petitioner's application for a writ of habeas corpus. He contends that the petitioner's claim concerning the preliminary instructions given by the trial court to prospective jurors is precluded from review by this court because the claim was resolved in the state court on independent and adequate state-law grounds and not upon Federal law. The respondent also contends that, in any event, the claim lacks merit. In like manner, the respondent maintains that the petitioner's allegation concerning the sufficiency of the evidence presented at

his trial also lacks merit and, thus, provides no basis upon which to grant Ferguson habeas corpus relief.

## II. BACKGROUND

In the early morning hours on June 15, 1998, after spending several hours at the Tunnel, a Manhattan night club, Brian Conklin ("Conklin") and Earl Evans ("Evans") were approached by three young men, as Conklin and Evans attempted to enter their parked automobile. Ferguson was among the three young men who approached Conklin and Evans, and he had a gun. Conklin recalled that the area near his automobile was well-lighted at the time the three young men approached him because a streetlight and the lights attached to an adjacent housing development were illuminated. Conklin watched the three young men as they approached him and, in particular, he looked at Ferguson's face because Ferguson was pointing a gun at Conklin's head. As Ferguson later trained the gun on Conklin and Evans, one of his accomplices, subsequently identified as Kevin McCray ("McCray")[1], searched Evans. However, McCray did not remove any property from Evans. Petitioner and another of his accomplices searched Conklin. A gold chain that was around Conklin's neck, a watch, and between $30 and $40 were taken from Conklin. As he was being searched and his property was being taken, Conklin recalled that he continued to stare at Ferguson's face. According to Conklin, the robbery was completed in approximately two to four minutes.

Ferguson and his accomplices fled together on foot after Conklin was relieved of his property; however, the three robbers soon split up. Conklin and Evans determined to follow McCray, whom they knew was not the robber who had the gun, using the automobile they were

---

[1] The record also identifies this robber as "Keith McCray."

attempting to enter at the time of the robbery. As Conklin and Evans trailed McCray, they encountered police officers in a police vehicle. Evans alighted from the car in which he was traveling with Conklin and pursued McCray on foot. He caught him and began to "tussle" with him. At the same time, Conklin approached the police officers and reported that he had been robbed at gunpoint. One of the officers summoned additional police officers to the scene for assistance, and a description of the two robbers who had separated from McCray was transmitted by radio to other police officers. Conklin recalled that the gunman was a dark-skinned black male, between 20 and 22 years of age, who had a corn row hairstyle, and slight facial hair near his ears. Conklin also recalled that the gunman was taller than he -- Conklin is 5 feet, 9 inches tall -- and that the gunman's build was stockier than Conklin's 160-pound frame. Furthermore, according to Conklin, the gunman wore a red hoodie, and red and black "Jordan" style sneakers.

Police Officer Brian Heffernan, one of the officers who responded to the location where McCray had been apprehended, after hearing the radio broadcast for assistance, observed two pedestrians waiving and pointing toward West 23rd Street. Officer Heffernan drove to West 23rd Street and traveled eastbound on that street. As he did so, he observed a black male who fit the general height, race and clothing description of one of the two robbery suspects, who were still at large, that had been broadcast over the police radio. The pertinent description was of a six-feet-four-inches-tall male wearing red clothing. However, at the time the petitioner was arrested, he was wearing a gray shirt or sweater.

Officer Heffernan recalled that Ferguson ducked behind a row of U-Haul trucks that were parked on West 23rd Street, after he spotted Officer Heffernan's police vehicle. Officer Heffernan stopped Ferguson, who is six feet, one inch tall, and began to frisk him. As he did so,

3

other officers joined him on West 23rd Street. Officer Heffernan advised the other officers that Ferguson had ducked behind a U-Haul truck that was approximately ten feet from where Officer Heffernan was standing with Ferguson. An officer searched the vicinity of that truck and recovered a .357 Black Hawk revolver. The revolver was dusted for fingerprints at the location where it was found. However, no fingerprints were recovered from the gun.

Ferguson was placed under arrest. Shortly thereafter, Conklin was brought to the location of Ferguson's arrest. Conklin identified Ferguson as the gunman who had robbed him, even though Ferguson was no longer wearing the red garment Conklin had recalled the gunman had been wearing earlier. Ferguson was wearing a gray sweatshirt, black jeans and red and black "Jordan" style sneakers. Ferguson was taken to the Tenth Police Precinct and searched. Conklin's gold chain and $18 were recovered from Ferguson as a result of that search.

Ferguson was indicted by a New York County grand jury. It charged him with two counts each of robbery in the first degree and attempted robbery in the first degree and one count each of robbery in the second degree, attempted robbery in the second degree, criminal possession of a weapon in the second degree and criminal possession of stolen property in the fifth degree.

Ferguson proceeded to trial before a petit jury. Prior to commencing the voir dire proceeding with the prospective jurors, the trial court described to them the charges contained in the indictment and the various elements of those crimes that had to be proven by the state. The court also discussed briefly with the prospective jurors legal precepts, such as proof beyond a reasonable doubt and the presumption of innocence, that are pertinent to a criminal trial.

The jury found Ferguson guilty for all charges made against him in the indictment.[2] Ferguson was sentenced to 15 years imprisonment on one count of robbery in the first degree, and 8 years imprisonment on one count of attempted robbery in the first degree. The trial judge determined that those sentences should be served consecutively to each other. Ferguson was also sentenced to 15 years imprisonment on the second count of robbery in the first degree, 8 years imprisonment on the second count of attempted robbery in the first degree, 8 years imprisonment for robbery in the second degree, 5 years imprisonment for attempted robbery in the second degree, 7 years imprisonment for possessing a weapon and one year imprisonment for possessing stolen property. The trial court directed that these sentences be served concurrently with the sentences it imposed for Ferguson's convictions for first degree robbery and attempted first degree robbery that the trial court required Ferguson to serve consecutively.

Ferguson appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department. He urged that court to upset his conviction because the preliminary instructions the trial court gave to the prospective jurors, prior to commencing the voir dire proceeding, detailed the elements of the charged crimes, but failed to caution the prospective jurors against deliberating prematurely on Ferguson's guilt. According to Ferguson, by failing to admonish the prospective jurors against premature deliberations, the trial court violated the New York Constitution and the 14th Amendment to the United States Constitution. Ferguson also alleged that since: (a) he did not match the description of the gunman broadcast by

---

[2]At the trial, Evans joined Conklin in identifying Ferguson as the gun-wielding robber, although, unlike Conklin, Evans never participated in any pretrial identification proceeding. He also identified the gold chain recovered from Ferguson at the time of his arrest as the gold chain Conklin wore on the day of the robbery. Conklin also identified the gold chain, at the trial, as among the items taken from him during the robbery.

5

the police, shortly before his arrest; and (b) no fingerprint or other evidence linking him to the handgun that was recovered from the vicinity where he was arrested, was presented to the jury, the evidence adduced at his trial was insufficient to prove his guilt of the charged crimes beyond a reasonable doubt. Therefore, Ferguson maintained that his conviction violated the New York Constitution and the 14th Amendment to the United States Constitution.

The Appellate Division affirmed Ferguson's conviction unanimously. It determined that the verdict rendered by the jury was based on legally sufficient evidence and was not against the weight of the evidence. In addition, the Appellate Division explained that issues of credibility and identification were properly presented to the jury; therefore, the court found no reason to disturb the jury's determinations on those issues. Furthermore, the Appellate Division found that Ferguson's challenge to the trial court's pre-voir dire instructions to the prospective jurors was unpreserved for appellate review, and the court declined to review that matter, in the exercise of its discretion, in the interest of justice. However, the court noted that, were it to review the claim made by Ferguson concerning the trial court's pre-voir dire instructions, it would find that the trial court's outline of the charges that Ferguson faced and its brief description of the applicable principles of law did not invite premature analysis of the evidence by the prospective jurors or prejudice Ferguson. See People v. Fergerson, 289 A.D.2d 17, 733 N.Y.S.2d 604 (App. Div. 1st Dep't 2001).

Ferguson sought leave to appeal to the New York Court of Appeals from the Appellate Division's determination. His application for leave to appeal to that court was denied. See People v. Fergerson, 97 N.Y.2d 754, 742 N.Y.S.2d 614 (2002). The instant petition for a writ of habeas corpus followed.

6

## III. DISCUSSION

*Trial Court's Jury Instructions*

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state-law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553-54 (1991). In most cases, a state procedural bar constitutes an adequate and independent state-law ground that is sufficient to preclude federal habeas corpus review. "In exceptional cases, however, an exorbitant application of a generally sound rule may affect the adequacy and independence of the state procedural ground, and allow the United States district court to consider the merits of a constitutional claim." Rosa v. Herbert, 277 F. Supp. 2d 342, 351 (S.D.N.Y. 2003) (quoting Lee v. Kemna, 534 U.S. 362, 376, 122 S. Ct. 877, 885 [2002]); see also Bell v. Poole, No. 00 Civ. 5214, 2003 WL 21244625, at *9 (E.D.N.Y. Apr. 10, 2003) ("The mere invocation of a procedural bar does not ... automatically preclude review in this court.").

The Second Circuit Court of Appeals has stated that a procedural bar is adequate to support a state-court judgment only if it is based on a rule that is "firmly established and regularly followed" by the state in question. Cotto v. Herbert, 331 F.3d 217, 239-41 (2d Cir. 2003). Thus, the parties to an action must have notice of the state procedural rule and the rule must be applied consistently in similar circumstances. See Bell, 2003 WL 21244625, at *9. Furthermore, a state procedural rule must serve a legitimate state interest. See Rosa, 277 F. Supp. 2d at 351; Smart v. Scully, 787 F.2d 816, 820 (2d Cir. 1986). However, "the adequacy of a state procedural bar is determined with reference to the particular application of the rule; it is

not enough that the rule generally serves a legitimate state interest." Cotto, 331 F.3d at 240 (quoting Lee, 534 U.S. at 387, 122 S. Ct. at 891) (internal quotation marks omitted). Therefore, an inquiry into whether the application of a procedural rule is "firmly established and regularly followed" in the specific circumstances presented in a case includes "an evaluation of the asserted state interest in applying the procedural rule in such circumstances." Id.

The Appellate Division did not dispose of Ferguson's claim concerning the trial court's preliminary instructions to the prospective jurors on the merits. Rather, the court found that this claim was not preserved for appellate review.

CPL § 470.05, in its most pertinent part, provides that:

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court....

CPL § 470.05(2).

The purpose of the rule is "to fairly apprise the court and the opposing party of the nature and scope of the matter contested." People v. Jones, 81 A.D.2d 22, 41-42, 440 N.Y.S.2d 248, 261 (App. Div. 2d Dep't 1981).

New York's contemporaneous objection rule is firmly established and has, for many years, been applied to claims of error involving federal constitutional rights. See People v. Iannelli, 69 N.Y.2d 684, 512 N.Y.S.2d 16 (1986); People v. Thomas, 50 N.Y.2d 467, 429 N.Y.S.2d 584 (1980). It has been applied routinely in circumstances, such as those in the case at

bar, in which a defendant did not register a timely protest to a trial court's preliminary jury instructions. See, e.g., People v. Cooper, 300 A.D.2d 4, 749 N.Y.S.2d 873 (App. Div. 1st Dep't 2002); People v. Walton, 220 A.D.2d 548, 632 N.Y.S.2d 212 (App. Div. 2d Dep't 1995); People v. McPherson, 182 A.D.2d 714, 582 N.Y.S.2d 480 (App. Div. 2d Dep't 1992); People v. Wilkins, 176 A.D.2d 976, 575 N.Y.S.2d 580 (App. Div. 2d Dep't 1991). Ferguson has not identified any respect in which the Appellate Division's application of this rule to the case at bar might have departed from the regular application of the rule to similar cases in New York appellate courts.

A habeas corpus petitioner may bypass the independent and adequate state-law ground by showing cause for the default and prejudice attributable thereto or by demonstrating that a fundamental miscarriage of justice will attend, that is, that the petitioner is actually innocent of the crime for which he was convicted, if the claim is not reviewed by the habeas court. See Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989). Therefore, in order to overcome the procedural bar imposed by the Appellate Division's determination that this claim is unpreserved, Ferguson must show cause for his default and prejudice attributable thereto or demonstrate that the failure to consider his federal claims will result in a fundamental miscarriage of justice. However, Ferguson has shown neither cause for his procedural default nor prejudice. Moreover, he has not proffered any new evidence that he is actually innocent.

In light of the foregoing, the petitioner may not obtain habeas corpus relief on this claim.

*Sufficiency of Evidence*

Under the Due Process Clause of the 14th Amendment, a criminal defendant may not be convicted "except upon sufficient proof -- defined as evidence necessary to convince a trier of

9

fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979). Habeas corpus relief based on a claim of insufficient evidence may only be granted if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Id. at 324, at 2791-92. Moreover, where, as here, a state court has adjudicated the merits of a claim raised in a petitioner's federal habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996 requires that the writ be denied unless the state court's adjudication resulted in a decision that: 1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000); Francis S. v. Stone, 221 F.3d 100 (2d Cir. 2000). A state court's determination of factual issues is presumed correct. An applicant for habeas corpus relief bears the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Ferguson claims that his 14th Amendment right to due process was violated because the evidence presented at his trial was insufficient to establish the elements of the various crimes for which he was convicted. More specifically, he contends that because he did not match the height and clothing descriptions of the robbery suspect that had been broadcast by the police and, furthermore, since no fingerprint or other evidence linking him to the gun recovered from the vicinity of his arrest was presented to the jury, no rational trier of fact could have found proof of his guilt beyond a reasonable doubt.

However, Ferguson has not identified how the Appellate Division's determination was contrary to or involved an unreasonable application of clearly established Federal law. Moreover, he has not shown how that court's decision on his appeal was grounded on an unreasonable determination of the facts in light of the evidence presented at his trial. While it is true that Ferguson's clothing did not match exactly the clothing description of the robbery suspect that Officer Heffernan received, and his fingerprints were not recovered from the gun received in evidence at his trial, Ferguson ignores other evidence in the trial record upon which the jury could have relied reasonably in returning a verdict of guilt against him. For example: Conklin testified that throughout the two to four minutes that the robbery lasted, his gaze never left Ferguson's face; both Conklin and Evans identified Ferguson as the gunman at his trial; Ferguson possessed Conklin's gold chain shortly after the robbery; and Ferguson made a furtive move, by ducking down near the U-Haul vehicle where the handgun was found, after he spotted Officer Heffernan's police vehicle approaching him.

In any event, as noted above, 28 U.S.C. § 2254(d) places certain burdens on a petitioner for habeas corpus relief when, as in the instant case, his claim(s) has been adjudicated on the merits by a state court. Ferguson has not met his burden. Therefore, he is not entitled to the habeas corpus relief he seeks based on his claim that insufficient evidence was presented at his trial to sustain a guilty verdict.

## IV. RECOMMENDATION

For the reasons set forth above, the petitioner's application for a writ of habeas corpus should be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kenneth M. Karas, 500 Pearl Street, Room 920, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Karas. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
November 7, 2005

Respectfully submitted,

*[signature: Kevin Nathaniel Fox]*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

John Ferguson, Esq.
Jennifer Danburg, Esq.

12